## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

    **v.**                        **Case No. 8:17-CR-63-T-24TGWM**

**David Ernest Esteves**

_____/

## SENTENCING MEMORANDUM
## A REQUEST FOR A DOWNWARD DEPARTURE
## BASED ON ABERRANT BEHAVIOR AND/OR
## A VARIANCE UNDER 18 U.S.C. §3553(a)(1)-(7)

COMES NOW the Defendant, **David Ernest Esteves**, by and through the undersigned attorneys and hereby files this Sentencing Memorandum in support of his request for the imposition of a downward departure and reasonable sentence no greater than necessary to comply with the purpose of sentencing enumerated in 18 U.S.C. §3553(a)(2) and as grounds in support thereof, Mr. Esteves would state the following:

## FACTUAL HISTORY

### Personal and Family

Mr. Esteves is 52-years-old. He was born and raised in Elmhurst Queens, New York and has no siblings. Mr. Esteves remained in New York until the age of 18. At the age of 18, Mr. Esteves enlisted in the military where he remained for six years. After leaving the military, Mr. Esteves relocated to Florida for some time. Thereafter, he moved to South Carolina briefly before settling in West Virginia for 13 years. Mr. Esteves received an Associate of Arts degree from National Institute of Technology (now Everest University) in Cross Lanes, West Virginia, in 1997. He graduated with a grade point average of 3.93. In 2003, Mr. Esteves moved back to Florida living in Pasco County until 2011 when he moved to Hillsborough County to care for his parents. He has remained in Hillsborough County since that time.

Mr. Esteves is married. He has three adult children, two adult step children, and recently became a grandfather. He played an active role in raising his children and continues to support their endeavors as young adults. His children are all respectful, law abiding citizens.

Sadly, Mr. Esteves' mother died in 2012 from cardiovascular disease and Mr. Esteves' father died in 2013 suffering from diabetes, Alzheimer's and depression.  Mr. Esteves was close to both of his parents and diligently cared for them prior to their deaths despite the metal, physical, and financial exhaustion that it brought him. Many of the services for his father, including the nursing home, were not covered by insurance. Mr. Esteves drained his savings to assure his father was well taken care of in his final months.

After resigning from Avant Air, Mr. Esteves worked repairing aircraft under his own name so that he could continue to support his family and care for his parents. In 2014, shortly after his father's death, Mr. Esteves was specifically sought for a position running maintenance for Haiti Air Ambulance, a non-profit organization funded by the Patrick Dolan foundation.

Mr. Esteves made arrangements with his family and traveled back and forth between Tampa and Haiti working with others to build Haiti Air Ambulance literally from the ground up. Mr. Esteves helped to clear a donated pig farm for the main base to lay the foundation. Thereafter, he worked to build a hanger, ordered all necessary items needed to service the helicopters and maintained the helicopters as the only mechanic for many months. Haiti Air Ambulance launched in 2014 as Haiti's first permanent, not-for-profit, helicopter emergency medical service. It instantly became integrated into Haiti's health care infrastructure providing care to the country's citizens and visitors, regardless of their income or where they may be at their time of need. Scores of Haitians die from accidents, shootings and other illnesses that could have been successfully treated had they reached a hospital emergency room in time. Because Haiti's landscape is rugged and mountainous, rough country roads make it close to impossible for ambulances to navigate. As a result, there are almost no ambulances and it can take days to reach those in need of urgent care. There are approximately ten million people living in Haiti and only one hospital provides advanced trauma and critical care. Filling this gap in the

Haitian health care system was critical. Mr. Esteves is proud and humbled to be a part of this advancement for the Haitian community.

Apart from the incident set forth in this matter from July of 2012, Mr. Esteves has led an exemplary life. He has taken full responsibility for his conduct during the events and is remorseful of his actions. This is evident by his timely cooperation with the Government and assistance provided to the authorities in the investigation of his superiors.  Further, this Court is being provided with letters from family, friends, and colleagues.  Mr. Esteves' many positive attributes are reflected in the letters.

## Offense Conduct

In 2012, Mr. Esteves was employed as Director of Maintenance at Avantair, Inc., (Avantair) an air taxi and airplane fractional ownership company based at the St. Petersburg-Clearwater International Airport in Clearwater, Florida. On the morning of July 28, 2012, as a Piaggio P180 Avanti airplane (Pl80), owned and operated by Avantair, took off on a flight from Camarillo, California, to San Diego, California, the left elevator fell off the plane. The plane landed in San Diego, picked up passengers, and took off for Henderson, Nevada, with its left elevator still missing.

During the flight to Henderson, the Pl80's captain noticed problems with the plane's performance and reported the problems by cell phone to Avantair. The call was recorded by the plane's Cockpit Voice Recorder (CVR). After landing in Henderson, Nevada, Avantair personnel instructed a third-party contractor (contractor) at the Henderson airport to inspect the P180. The contractor confirmed that the left elevator was missing and reported that the nuts and bolts attaching the right elevator to the tail were also unsafely loose. Federal regulations and internal company policy required that the plane be quarantined at the Henderson airport following the incident involving the loss of the elevator pending investigation by the National Transportation Safety Board (NTSB) and Federal Aviation Administration (FAA). The NTSB and FAA were informed of the incident and prepared to investigate its cause and the airworthiness of the aircraft. This incident caused the temporary grounding of Avantair's entire fleet of airplanes.

On July 30, 2012, before the arrival of the NTSB and FAA investigators at the Henderson airport and acting at the direction of an Avantair superior, Esteves instructed the contractor to remove the nuts, bolts, and right elevator and mail them back to Avantair's base in Clearwater, Florida. This action was to intentionally prevent the NTSB and FAA investigators from examining the condition of the right elevator as it existed during the flights to San Diego and Henderson. The contractor complied. On or about the same day, acting at the suggestion of an Avantair superior, Esteves instructed the contractor to power up the plane to erase the CVR recording of the flight to Henderson. This instruction was made with the intent that such recording be erased before the NTSB or FAA investigators had the opportunity to review the recording. The contractor refused to comply with this instruction.

## PROCEDURAL HISTORY

On February 14, 2017, the government filed a one-count Information and Waiver of Indictment in the Middle District of Florida, Tampa Division, naming David Ernest Esteves as the defendant. At this time, Mr. Esteves is the only individual that has been charged for the incident occurring in July 2012.

On February 15, 2017, a Plea Agreement was filed and Mr. Esteves entered a guilty plea on March 10, 2017. Mr. Esteves' plea was accepted by this Court and sentencing is scheduled for June 23, 2017 at 8:30 am.

The Government has no objection to the Pre-sentence Report. The Government has reported that Mr. Esteves has fully and sincerely accepted responsibility for his actions. The Defense has no unresolved objection to the factual assertions in the Pre-sentence Report.

## PART A.

## REQUEST FOR DOWNWARD DEPARTURE
## ON THE GROUND OF ABERRANT BEHAVIOR

Mr. Esteves requests that this Court consider his conduct as aberrant behavior under § 5K2.20, and impose a "below-guidelines" sentence of probation and/or home

detention. <u>U.S. v. Orrega</u>, 363 F.3d 1093 outlines for the Court when a downward departure for aberrant behavior is, and is not, permissible.

In the case at hand, this Court may downward depart on the ground of aberrant behavior, not only because the facts make it is permissible to do so, but also because Mr. Esteves' conduct fits the definition of aberrant behavior.  In <u>Orrega</u>, at 1096 the Court stated that a downward departure based on aberrant behavior is not permissible if:

(1)     The offense involved serious bodily injury or death.

(2)     The defendant discharged a firearm or otherwise used a firearm or a dangerous weapon.

(3)     The instant offense of conviction is a serious drug trafficking offense.

(4)     The defendant has more than one criminal history point.

(5)     The defendant has a prior conviction.

In the case at bar, the offense does not involve serious bodily injury or death, nor is Mr. Esteves alleged to have used or discharged a firearm or a dangerous weapon, the offense is not a serious drug trafficking offense, Mr. Esteves does not have any criminal history so as to disqualify him pursuant to the *Orrega* decision. Mr. Esteves was charged and entered a plea to one count of *Obstruction of Proceedings Before a Department, Agency, or Committee*. He is not charged with having been criminally liable for the elevator's malfunction.

<u>Orrega</u>, at 1096 continues to define what qualifies as aberrant behavior by stating:

(1)     The case must be extraordinary.

(2)     The defendant's conduct must constitute aberrant behavior.

(3)     The defendant cannot be disqualified by any of the five-listed factors.

## **(1) The case at bar is extraordinary.**

The case at bar is extraordinary in that Mr. Esteves' conduct arose based on a panicked desire for "damage control" by superiors at Avantair after a highly unusual incident had occurred. An airplane elevator had fallen off shortly after takeoff, went

unnoticed during the landing and takeoff at the next stop and was discovered missing after the landing at a second stop in Henderson, NV. At a time when not all the details of what had actually occurred were known, Mr. Esteves was directed to relay information to the independent contractor/mechanic in Henderson, NV. The specific conduct that generated the charges against Mr. Esteves occurred during a relatively short timeframe and during which great pressure was put on Mr. Esteves to act quickly. These circumstances provided very little time for reflection due to the immediacy with which his superiors required that their instructions be conveyed to the mechanic in Henderson.

**(2)  Mr. Esteves' conduct constitutes aberrant behavior.**  The Orrega Court, at 1096 defined aberrant behavior as follows:

A single criminal occurrence or single criminal transaction that:

(A.)     was committed without significant planning,

(B.)     was of limited duration, and

(C.)     represents a marked deviation by the defendant from an otherwise law-abiding life.

Mr. Esteves' conduct in late-July 2012 represents a single act or transaction because all of the conduct that constituted the charge involved instructions relayed to the mechanic in Henderson, NV concerning this one highly unusual incident involving a single aircraft during a relatively short timeframe. This was not a course of conduct concocted over a lengthy period of time involving some larger overarching conspiracy. While the corporation itself may have had other questionable conduct, Mr. Esteves conduct was a short lived, marked departure from an otherwise law abiding life. It is not alleged that Mr. Esteves committed any other criminal acts prior, or subsequent, to the transactions resulting in the making of the phone calls at the direction of his superiors.

The above stated behavior constitutes aberrant behavior in so far as it is in no way reflective of the conduct with which Mr. Esteves has otherwise conducted his honorable prior military career, his professional career in the private aviation sector and his personal life.

**(3) Mr. Esteves is not disqualified by any of the aforementioned five-listed factors which would have precluded a downward departure.** None of the preclusive factors under <u>Orrega</u> apply to this matter.

## **PART B.**

## **REQUEST FOR VARIANCE BASED ON 18 U.S.C. §3553(a)(1)-(7)**

<u>U.S. v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2004) states that the sentencing guidelines are to be considered as *one* of the factors pursuant to 18 U.S.C. §3553(a).  This Section of the Code indicates that the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Paragraph (2) of the Subsection. The Court, in determining a particular sentence, must consider:

(1)     The nature and circumstances of the offense and the history and characteristics of the Defendant.

(2)     The need for the sentence imposed –

    a.     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

    b.     To afford adequate deterrence to criminal conduct.

    c.     To protect the public from further crimes of the defendant.

    d.     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3)     The kinds of sentences available.

(4)     The kinds of sentence and sentencing range established for:

    a.     The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

(5)     Any pertinent policy statement.

(6)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(7)     The need to provide restitution to any victims of the offense.


In the case at hand, this Court has the authority to impose a probation and/or home detention sentence.  Mr. Esteves requests that the Court impose a probation and/or home detention sentence.

Mr. Esteves suggests that there are numerous factors that support a request for variance based on 18 U.S.C. §3553(a)(1)-(7). In particular, the nature and circumstances of the offense and the history and characteristics of Mr. Esteves lend themselves as reasons that the Court might consider a downward variance from the advisory guideline range. These circumstances include the factors listed above concerning the request for a downward departure for aberrant behavior, Mr. Esteves' forthright cooperation with both the investigative agencies and the US Attorney's office in the investigation and prosecution of the case, Mr. Esteves' free and voluntary admission of guilt, the devastating effect that a federal conviction has had on his professional career and will likely continue to have in the future, the emotional devastation and embarrassment this has caused Mr. Esteves and the stressful situation concerning the health of members of Mr. Esteves' family that were occurring during the time frame in which the facts of this case unfolded. The letters attached to this memorandum highlight these factors.

Incarceration is not necessary to deter Mr. Esteves from any future criminal conduct. It is highly unlikely that he would reoffend. Similarly, incarcerating Mr. Esteves is not necessary to protect the public. Mr. Esteves has no prior criminal history and there is nothing in the Pre-sentence Report that would indicate that the conduct that gave rise to these charges represents anything other than a short lived, marked departure from an otherwise law abiding life. Mr. Esteves has complied with all conditions of pretrial release without incident. Additionally, it is notable that during the four years since the criminal conduct that gave rise to this case, Mr. Esteves has similarly led a law abiding and productive life. When contacted concerning these charges Mr. Esteves has been cooperative and truthful with law enforcement. He has expressed genuine remorse for his conduct.

## CONCLUSION

For the aforementioned reasons, Mr. Esteves respectively requests that this Court impose probation and/or home detention, and allow him to continue as a contributing member of this community.  His history has shown that the July 2012 event was an aberrant act. A variance from the guidelines is warranted to fashion a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(1)-(7).  A probation sentence will be a fair and just punishment.


Respectfully submitted this 21st day of June, 2007.


*/s/ Scott L. Robbins*
Scott L. Robbins, Esquire
Florida Bar No. 0352111
607 W. Horatio Street
Tampa, Florida33606
Telephone: (813) 258-2909
Fax: (813) 254-6243
scottlrobbins@aol.com
scottrobbins@aol.com


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of June, 2017, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court.

*/s/ Scott L. Robbins*
Scott L. Robbins, Esquire
Florida Bar No. 0352111
607 W. Horatio Street
Tampa, Florida33606
Telephone: (813) 258-2909
Fax: (813) 254-6243
scottlrobbins@aol.com
scottrobbins@aol.com

June 21, 2017

The Honorable Susan C. Bucklew
United States District Judge

Dear Judge Bucklew:

It is with the utmost love and respect that I write this letter regarding my husband, David Ernest Esteves. He has shown me over the last 5 years of what it is to be a wonderful father, caring son and most of all what it truly means to be a great husband, friend and hard worker.

Since the day I met David, he has always shown me love and respect in his words, actions, and how he takes care of everyone that he loves.  Together we have five children, two mine, three his, but to us we have five.  There is no yours and mine, it is ours.  He took on the role of father to my two children immediately.  Their own father did not want anything to do with them and had no contact with them. David instantly took them under his wing and has been the most supportive father one could ever imagine.

When David and I met, his mother had just passed away 6 weeks prior.  I witnessed how he took care of his father, taking him to doctor appointments, checking on him during the day while he was at work, bringing people in to the home to help care for him so he could continue to work and support the family.  It was extremely difficult at times as his father would get combative.  David handled all this with love and respect for the parents that raised him.   He never waivered in his love and caring for his parents.  He didn't care for them because he had to; he did it because he wanted to.   He never complained about how exhausted he was.  David did not want to worry me or the children.  He took his responsibility of caring for his father very seriously.

When the day came that David had to put his father in a home, as we could not care for him alone, it broke his heart.  I saw the pain in his eyes.   His father needed care that David just couldn't do any longer.   He visited him as often as he could.  It crushed him when his father would ask when he could come home.

After resigning from Avant Air, David looked for work everywhere.  He could not find anything around this area.  He needed to stay in the area to make sure his father was taken care of.  He worked repairing aircraft under his own name to support the family.  He exhausted all funds that he had saved.  The cost of taking care of his father at the home was not covered by insurance.  David paid for that out of his own savings, (which wasn't much).  David finally found a job but it was working in Haiti.  He accepted the position and he started in February 2014 (2 months after his father passed away).  He built Haiti Air Ambulance from a slab on the ground to building the hangar, ordering all necessary items needed to service the helicopters, and was the only mechanic for a couple of months.  He was gone for a month at a time and then home for three weeks.  This was tough on him but he did it because he did what he had to do to support us.   When he was able to find a job in St Petersburg, everyone in Haiti was so disappointed because he was the best mechanic they had ever met.  He has the most integrity of anyone I know.  His work ethic is beyond reproach.

I have seen on a daily basis what this situation has done to David. He has always had great respect for the law. He has raised wonderful children to respect and obey all laws. David would never knowingly break the law, especially when it comes to his work and the safety of other human beings. It has caused him to reflect a great deal and try and think of what he could have done differently then and now. This whole situation is never far from his mind. It has caused us a great deal of anguish, worry and he has lost his job over this. He was fortunate to find another job but he does not receive the salary he deserves. To say that these charges have been a nightmare is an understatement. David has suffered financially as well as mentally and physically. I am certain that David will never forget this and will never allow anyone to place him in this type of situation ever again.

In summary, David Esteves, my husband, is the most kind, hard-working, loving man I have ever met. He would never do anything to hurt anyone or anything. David and I don't have much but we have what many will never see in their lifetime, a truly loving, committed marriage that nothing can separate. The love he demonstrates each and every day to me, our children and our grandson is amazing. It is my hope that you will find that David is, and will never be, a threat to society. He has proven his respect for the law by cooperating to the fullest extent possible and will continue to do so.

Respectfully,

Janice M. Esteves

Janice M. Esteves

To whom it may Concern

April 11th 2017

**Re: Mr David Estevez**

My name is Stacy Fiscus, I am the Clinical Base Manager of Haiti Air Ambulance, a Helicopter Emergency Medical transport service provided free for the people of Haiti. I have been employed here for over two years. Prior to working here I worked for Air Evac Lifeteam at multiple bases in the USA.

I am currently a Board Member of the International Association of Flight & Critical Care Paramedics as well as the Air Medical Memorial, I graduated from the Safety Management Training Academy and became one of only 30 certified Medical Transport Safety Professionals in the world, I am also currently the chair person of AAMS Vision Zero, promoting a zero accident goal for the Air Medical Industry.

During the majority of my first two years in Haiti our lead helicopter mechanic was Dave Esteves. Having worked with many mechanics at many Helicopter bases I believe Dave was one of, if not the best, with whom it has ever been my privilege of working. Dave was always a complete professional and unstinting in his dedication to the demands placed upon him in singlehandedly maintaining and repairing our two Bell Helicopters. His communication skills were excellent and I was always aware of the work he had to do or had completed and he was always willing to explain and show pilots and crew members what he had done on their behalf. He is sorely missed in Haiti both as a colleague and a friend.

I thoroughly commend Dave to you as a dedicated and committed, safety oriented, professional in his field.

Stacy Fiscus. MTSP-C, FP-C, CCP-C, CCEMTP, NRP

Haiti Air Ambulance

Port Au Prince

Haiti,  +509 3701 1669

To Whom it may concern.

April 11th 2017

**<u>Re. Mr David Esteves</u>**

For the past three years I have been employed as an EMS Helicopter pilot at Haiti Air Ambulance, based in Port Au Prince, Haiti. During the first two years of my employment I have long considered myself extremely fortunate to have had Dave Esteves as the lead mechanic at this programme.

Dave exemplified everything that I could ever ask for in an aircraft mechanic, professional, diligent, extremely knowledgeable, both of the aircraft and the rules and regulations regarding its use.  Meticulous in his work habits and attention to detail and unsurpassed in his attitude toward the safety of all who flew or would fly in the aircraft he maintained. The work conditions here in Haiti are basic, the frustrations many and the month long tours extremely arduous, but I never heard a complaint and not once did he allow any event to distract him from carrying out his work in the most professional manner. I know that I speak on behalf of all the pilots and crews that worked with him here, when I say that we were very disappointed to see him leave to spend more time at home and pursue his career with another company.

Having been a pilot for over 30 years with excess of 8000 hours of flight time, I can categorically state that I would never hesitate to fly in an aircraft that Dave had maintained or supervised the maintenance thereof, his work was always of the highest caliber and I have complete trust in his abilities.

Phil Newson

Lead Pilot

Haiti Air Ambulance

Port Au Prince

Haiti. (+1 509 4892 2168)

Ann Lowell
Former Lead Pilot
Haiti Air Ambulance
33 Oak Hill Dr.
Asheville, NC 28806
06/12/2017

David Esteves
12410 Forest Lane Dr.
Tampa, FL 33624

To whom it may concern:

I met David for approximately 3 ½ years ago while working in Port au Prince, Haiti. During our time together David demonstrated exceptional character. The harsh environment of Port au Prince was difficult and challenging most of the time. Despite the challenges we faced on a day to day basis David always handled his duties as an aircraft mechanic with professionalism. His exceptional work ethic was didn't go unnoticed by myself or the rest of the crew assigned to the Haiti contract. David demonstrated a high level of passion for his job. He participated in morning crew brief and always communicated well. You could always count on David to do what's right. He would speak up when something wasn't right and had the ability to stand his ground.

Working the Haiti contract not only meant working together, but also living together. This allowed me to get to know David on a personal level. He demonstrated the same level of passion for his family as he did for his work.  This just confirmed that he was a real, honest, and caring man. He wouldn't hesitate to offer a helping hand, and always put his family and crew first.

I flew two aircraft maintained by David for two years. There was never a doubt in my mind regarding his honesty and integrity.  If given the opportunity I would work with David again. I highly recommend him as an aircraft mechanic.


Sincerely,

Ann Lowell



**Dave Esteves <desteves2665@gmail.com>**

## Letter
1 message

**Hector Flores** <hflores@walkaboutair.com>                     Fri, Apr 7, 2017 at 10:17 AM
To: "desteves2665@gmail.com" <desteves2665@gmail.com>

To whom it may concern:

I have known Dave Esteves for over 7 years as an Aircraft Technician and a friend .I have always regarded him as a person of excellent character and professionalism.

He has worked with me throughout the years and as a contractor for Walkabout Air.

I could always count on him to be there when I needed him and as always, to perform in a very contentious and professional manor.

Dave has always given his best and has always had the most positive demeanor while performing even the most difficult tasks.

I will continue to ask him for help if needed and I would not hesitate to recommend him to any potential

Employer as his experience and aviation knowledge would be a great asset to any Aviation Department.

Please do not hesitate to call me with any question regarding this letter.

Sincerely,

*Hector Flores*

*Director of Maintenance*

**WALKABOUT AIR**

*Executive Aircraft Services*

*2450 North WestShore Blvd. Suite 215*

*Tampa, Florida 33607*

**Cell**    813-245-7341

**Phone** 813-877-9387

hflores@walkaboutair.com

April 6, 2017

Subject: Letter of Recommendation

To Whom It May Concern:

Please accept this letter of recommendation for David E. Esteves. I have known Dave for approximately a total of eight years. We met while I worked at Avantair as the General Manager of the Camarillo maintenance facility.

During the time that I have known Dave, I have found him to be a very loyal, honest, respectful, considerate and reliable and professional person.  Dave is an excellent communicator and problem solver and has an excellent rapport with people. He is a well-balanced person with an abundance of positive qualities. Dave is a competent and knowledgeable professional.

I feel these attributes demonstrate someone with an exceptional character. A dedicated father and grandfather David`s love for his family is first and foremost to his being.

In conclusion, I can confirm that in the time I have known Dave, he has been a trustworthy and descent person.

Sincerely

Joseph A. Enderle

Cell # 805-444-9624

**4/6/2017**

**Robert Ebaugh**

PO Box 11145
St Petersburg, FL.
33733

Character Reference

David Estevies

It is my pleasure to write a reference letter for David Estevies.   I was the senior line captain at Avantair when I retired in January 2011.

I remember when David was hired at Avantair and enjoyed the opportunity to work with him in conjunction with his responsibilities in the maintenance department over several years.   In that time, I never observed anything other than the highest degree of professionalism and commitment to safety.   My service situations and write ups were handled promptly and properly.

If there are any further questions, I can be reached at 727-510-8164.

Sincerely,

Robert Ebaugh, Retired Avantair Pilot

Dana Caggia
19203 Cinnamon Ridge Way
Tampa, FL 33647
813-416-9024

April 30, 2017

Re:  David Esteves

To Whom it May Concern,

I am writing on behalf of David Esteves, whom I have known for seven years.  Over the years David has demonstrated his strong character and commitment to excellence.

David's family relies on his levelheadedness and steadfast nature.  He is a responsible and dedicated father and husband.  He is always available to his children with guidance and support.  He is a faithful, loving, kindhearted and patient husband who always thinks of his family first.

Thank you for your time and consideration.

Sincerely,

Dana Caggia

June 21, 2017

To the Honorable Susan C. Bucklew
United States District Judge

Your Honor,

I have known Dave since 2014 when he married my long-time friend Janice. Janice is part of our family and so is Dave. He immediately stepped up and became the positive father figure Janice's children needed. He is fair and treats all of their children with respect. He has been like an uncle to my children, accepting them like his own. He has watched my grandchildren when my daughter needed time to study for the bar. He is there when needed and will go out of his way to help others.

Dave is hard working and honest. He and I talked about his time in Haiti and how it meant so much to him to work for a company that allowed him to provide a good life for his family. The only drawback was being away from family for a month at a time. He was good at what he did and when he finally found a job in St. Petersburg, the company in Haiti didn't want him to leave. But Dave was newly married and needed to be home more regularly with his wife and children, because, to him, family was first. Being retired military and having deployed for six months at a time, I know what he was going through and have the upmost respect for him.

Finally, I know Dave is beating himself up daily over what he did and what he could have done differently. I know this situation has caused him much stress and job loss. Dave wouldn't knowingly break the law, especially when others could be harmed. He has been open and honest in these proceedings and I have no doubt that a sentence of probation would be as impactful as incarceration.

Respectively,

Robert Kent Denney, Jr.

June 21, 2017
The Honorable Susan C. Bucklew
United States District Judge

Your Honor,
I am writing a character reference for my father, David Esteves, who is pleading guilty to the charge of "Attempt to Obstruct an Investigation". He informed me of this two months ago when it was confirmed that he was taking a plea deal.

At first, I couldn't understand anything he was saying, almost as if I were in a daze. I've never had a hard life. Nothing was necessarily handed to me, I've always had to work for things but in the event that I need help my father always lends his hand. Most people don't know him like I do. On the outside, he is a man that doesn't smile much, but he can make you laugh until you cry. I've only been on the Earth for a short time but I can honestly say he's the most humble, kindest, and hardworking person I've ever met. He would travel a lot when I was younger and he would drive endless hours after working a long day just to make it home for one day. Just one day to come see us and he always came with a little gift, nothing special. The gifts were mainly books about random topics. He always said to me "it's good to know information about anything, to be informed in life because when you're informed, you can make sound decisions". I had asthma growing up and every time I would have an asthma attack in the middle of the night he would come upstairs and squeeze into a twin size bed with me until I went back to sleep, and even at 23 years old he rubs my feet and caters to me when I feel ill, without one single complaint.

I'm still in school, which feels like a never-ending journey but my father has encouraged me along every gruesome step. When I need to take a semester off to save money, he applauds me for doing both school and work. Or when I'm up till all hours of the night studying for a test, he welcomes all my random calculus lessons to help me better understand my topic, and waits anxiously to hear my test grade.

My father has cooperated with the authorities associated with this case and has been more than willing to accommodate their needs. As his sentencing dates approaches I have seen his mood change. I've never seen such a look on his face, a look of worry, scared of the unknown. He is a confident man, a man with extreme integrity but lately, I haven't seen that man.

If you have any questions, please feel free to call me: 727-667-1473

Sincerely,

Amanda Esteves
12063 Citrus Falls Circle Apt. 202
Tampa, Florida 33625

June 21, 2017
The Honorable Susan C. Bucklew
United States District Judge

Your Honor,

I am writing a character reference for my father, David Esteves, who is pleading guilty to the charge of
"Attempt to Obstruct an Investigation". He informed me of this two months ago when it was certain he
was taking a plea deal.

Confusion was the primary thing on my mind when my father told me of this. My father has always been
a person of integrity and was sought after by many people in the aviation community. So, the thought of
him breaking the law in a community that is dedicated to stringent procedures was baffling. Growing up
with my father was what instilled my sense of work ethic. "Do the job right the first time" is one vivid
memory he taught me back when I was just a six-year old. He had just finished completing an inspection
on the helicopter he maintained and I asked him why he was so particular on how it was accomplished.
He looked up at me from his desk and said, "If there is one thing you should always do Mats; it's you
should always do the job right the first time so no one can bring it up against you in the future". Six-year
old me didn't really understand what he meant at that point, but simply said "Ok dad" because six-year
old me was hungry and wanted McDonalds. It wasn't until I was a year into my military service where it
clicked in my head. Everything we do in life is looked back on either by ourselves or by someone else,
and there is no greater feeling than knowing what you did was right. My father taught me that.

My father has been working in the aviation community for over 30 years and before this "investigation"
came up there wasn't a single stain on his resume. Just recently he was given a job working on general
aircraft because of an old co-worker he dealt with back in the 1980's. A man who hasn't seen my father
in nearly 25 years remembered him and offered a job immediately because of the professionalism and
integrity he has. Whenever I came home off leave I would tag along with my father to work at times just
to spend time with him. While there I would ask questions about him to his co-workers and the most
negative answer I would get is "he's very anal about how we follow procedures". It's understood that I
wouldn't be the person I am today if not for my father's influence. He was the one who taught me about
integrity and hard work. He was the one I would go to if I needed advice on how to handle certain
situations during my military service. He was the one who instilled in me that anything is possible as long
as you do it the right way.

My father has cooperated with the authorities associated with this case and has been more than willing
to accommodate them with anything requested. Presently, there has been a noticeable shift in my
father's demeanor as his sentencing date approaches. He is visibly worried and is much quieter than
usual. He's worried about how his wife will handle things if he is incarcerated, he's worried about how
his children will view him, and he's worried if he will be able to work in the profession he has poured his
life into.

He is loved by his family and friends and is looked upon by his peers as a consummate professional with
little to no equal.

Should you need to verify any of my above statements, please feel free to contact me at (727) 237-4000.

Sincerely,

Matthew S. Esteves
12140 Forest Lane Dr.
Tampa, Florida 33624





